EEOC v. AutoZone EEOC v. AutoZone EEOC v. AutoZone Good morning, Your Honors. Christine Bak for the Commission as Appellant. Race discrimination can manifest in a variety of ways. It can manifest in lower pay. It can manifest in hostility through words, in denigrating treatment at the workplace. In a segregation case, the race discrimination is made manifest in an employer's intentional separation of one employee from other employees based on their race. The language of Title VII's provision prohibiting race segregation is straightforward. That section prohibits segregation of employees in any way which would deprive or tend to deprive any individual of employment opportunities because of their race. There is evidence in this case, ample evidence, that would allow a reasonable fact-finder to conclude that AutoZone segregated its employees based on race and that this segregation deprived and tends to deprive individuals of employment opportunities. To segregate means to separate. Segregating by race, then, means to separate by race. And that is what AutoZone did when it transferred its black manager, Kevin Stuckey, out of its... I don't think that's the pressure point of this case. The pressure point here is adverse employment action or whether this alleged segregation that is the subject of this claim deprived anybody of an employment opportunity or otherwise adversely affected his status as an employee, to use the statutory language. That's what the fight's about. Your Honor... So maybe we can focus on that. Sure. What was the adverse employment action or other deprivation of an employment opportunity? The plain language of the statute, Your Honor, prohibits segregation. The adverse employment action in this case is the act of segregation. No, it doesn't. It says it prohibits segregation that deprives or tends to deprive any individual of employment opportunities. Correct, Your Honor. So I join my colleague in suggesting that you talk about that requirement in the statute. The deprivation... Your brief proceeds as if that part of the statute didn't exist, and it does. Your Honor, that is correct. That is a part of the statute, and the Commission has addressed that both in its opening and reply brief by stating the following. The deprivation of the employment opportunity was the removal of Mr. Stuckey from the employment opportunity of working at the Kedzie retail store. That is the deprivation. Nothing in the statute requires more than a deprivation of an employment-related opportunity. And that makes sense, Your Honors, because of the scope of the practice that's being targeted here. One of the district court's fundamental errors was its failure to understand and act a racial segregation as being a pernicious harm. And here the segregation occurred, and it deprived not only Mr. Stuckey, but also certainly if Mr. Stuckey was not permitted to work at that retail location, this would deprive other individuals, such as Mr. Stuckey, any non-Hispanic individual from working at that store. The Fourth, Fifth, and D.C. Circuits relied on the understanding that segregation in and of itself is the materiality of the offense, Your Honors. Judge Sykes, your question was, where's the materiality here? The materiality here arises from the segregation itself. This Court has explained in a number of decisions that the materiality requirements at this point Why does that language in the statute exist? What you're now arguing is that we should read the statute as if it had a period after classify or segregate employees, period. Because any time segregation exists, there will be a deprivation of employment opportunities. That would essentially read that language out of the statute by making it unnecessary in every case. Why do you think that's the best way to read the statute? Your Honor, segregation is a categorical exclusion. That sounds like a disagreement with Congress. You're saying Congress shouldn't have added this extra stuff. That gets in the way. Not at all, Your Honor. What I am trying to get to, Your Honor, is the deprivation of an employment opportunity, by its plain language, is just that. It's an opportunity that is employment related. Your argument is We are reading nothing out of the statute. There's nothing that the statute requires beyond that, Your Honor. The agency's argument here is that a deprivation of employment opportunity is inherent in any act of segregation, and that does read the additional language out of the statute. You're saying the act of segregation itself works a deprivation, and that can't be the way this statute is interpreted and applied because it renders the additional language a nullity. Your Honor, the additional language is not invalidated at all. You're saying all we have to prove is an act of intentional segregation. Nothing else is required. Your Honor, Mr. Stuckey was deprived of the opportunity to work at a particular location. That is an employment opportunity. There is nothing that the statute requires beyond that. And to your point, Your Honor, about how to analyze the deprivation language, this Court, in Kyle's decision, did just that in the job application setting. It said that in analyzing the tendency to deprive another individual, this Court said that when a job applicant applies for a job, not only is that individual affected, but the harm that's prohibited by the statute, the tendency to deprive, operates in that case where a categorical exclusion to not hire somebody because they were black would affect other applicants, other individuals. The commission is arguing no differently than Kyle's rationale. Right. That act might qualify refusing to hire someone because of race. But what you're talking about here is a transfer. He's not being denied anything. He's being transferred. Your Honor, the language of deprivation of an employment opportunity, he is being deprived of that opportunity. In another understanding, the Fifth Circuit— Are you seeking, for example, an opportunity to prove that if AutoZone's asserted policy were applied consistently, Hispanics in Hispanic stores and blacks in black stores and whites in stores with white clientele, that that would, over the long run, make it harder for black employees to be promoted? Your Honor, the evidence in this case illustrates the effect that you are saying, that you've just described. For example, once Mr. Stuckey was transferred out of this retail location, he was replaced by a Hispanic. Mr. Harrington, who was a store manager who voluntarily requested a transfer, he was placed at a predominantly, actually 100 percent black staff store, and he was replaced by a Hispanic. Another employee witness stated that after— Counsel, I ask a concrete question. Are you seeking to prove a particular point? I ask that in part because as this discussion involving Judge Sykes and you and I has revealed, your position seems to be it's not necessary to prove any of these things. So I'm trying to figure out whether what the Commission wants is the opportunity to prove something, even though you say you don't think you need to prove it. Your Honor, the evidence shows— I'm not asking what you think the evidence now shows. I'm asking whether you want to prove anything, say, in addition to what the record now shows. Or are you happy to have this case resolved on this record and the argument you're now making that what follows the word employment in this subsection should be treated as if it didn't exist? Your Honor, the Commission respectfully is not treating that language as though it doesn't exist. Don't quibble. Answer my question, please. Are you seeking the opportunity to prove something particular? We are seeking the opportunity to prove that AutoZone had a practice of racially segregating its employees and did so with respect to Mr. Stuckey. This was an act of racial segregation. If that's what you're seeking to prove, then you want to abridge the statute at the word employment, and you're not seeking to prove what I asked. That's fine. You don't have to seek to prove that, but it may have legal consequences. Your Honor, the Fourth, Fifth, and Sixth Circuits did not have understood and analyzed the analogous provision in Title VII which prohibits race segregation in locals. The rationale in those decisions did not discuss materiality, and it broadly understood what a deprivation of an employment opportunity is. For example, in the Fifth Circuit's Longshoremen's Association decision, Judge Goldberg explained that the deprivation that occurs is the dissuading of black longshoremen from pursuing a job on the court because of the racial stigma that exists and that's created by racially segregated locals. That is what the Fifth Circuit, Judge Goldberg writing for the Fifth Circuit, explained was the deprivation of an employment opportunity. Here, Your Honors, the Commission simply submits that the deprivation here, a deprivation within the meaning of the statute occurred. It was a deprivation because he no longer works at this location because of the intent to segregate his workforce. Your Honor, we know that that's the intent of the transfer because Robert Harris, the AutoZone's district manager, told Mr. Stuckey that that was the reason for the transfer. Your Honor, the plain language of the statute is clear, and on this record evidence, this is sufficient to create a triable issue that AutoZone violated Title VII. Judge Sykes, back to your point about adverse action and materiality, this court has repeatedly acknowledged that the point of that requirement is to separate trivial harms from non-trivial harms, and certainly this court can agree that racial segregation is not a trivial harm that was meant to be excised from protection of the statute. Its language expressly protects that. In accordance with that understanding, understanding that deprivation of employment opportunity, not to be a searching examination but basically the plain language, the evidence that the Commission has presented is sufficient to make that's out of violation of that, Your Honor. And a transfer, a geographic change of location, is in essence the nature of segregation, Your Honor, is the separation, geographic removal, either in office space, in assignments, in this case in actual geography. It's perfectly consistent with a prohibition of segregation that this kind of transfer would be very much within the purview of the deprivation of employment opportunity that was contemplated here. Your Honors, I see that I have run into my time. I will reserve the remaining for rebuttal. Thank you. Thank you, Ms. Back. Ms. Kirk. Yes, and I please the Court. I'm here on behalf of the defendant appellee, AutoZoners and AutoZone, Inc. This case, quite frankly, should never have been brought by the EEOC. It is very clear from the statute and from the case law, particularly from the Seventh Circuit. I don't think there's anything very clear. I mean, putting aside the Commission's apparent stubborn refusal to prove what seems obvious, isn't this case resting on the same basic point as Brown against the Board of Education, that somebody who is excluded from a substantial portion of the economy has been deprived of important opportunities? Your Honor, the facts do not bear that out. I understand your argument that there was no segregation, but that's not the ground on which this case was decided, and it's not the issue now before us. The question before us is whether the EEOC has to prove an adverse employment action in the sense used in Subsection A-1 in a case under Subsection A-2, which has different language. The question I'm now asking you is whether there is any difficulty with the proposition, one parallel to Brown against the Board of Education, that if AutoZone assigns black managers to black stores and therefore effectively excludes them from almost 90 percent of its stores, that that deprives them of opportunities. Clearly the language in A-1 and A-2 is different, and the language in A-2 is broader because it has the language deprives or tends to deprive. Accepting the EEOC's argument that Mr. Stuckey not being allowed to work at the Kedzie store is a deprivation of an employment opportunity, we submit essentially conflates the argument and says the act of segregation in and of itself. Well, look, it may be that the EEOC hasn't tried or won't try to prove that the language of Subsection A-2 has been met, but I hope you agree that the district court's holding that in order to prove a violation of Subsection A-2, one has to prove a violation of Subsection A-1 is wrong. They have different language. That is correct, Your Honor, and the language in A-2 is broader when it says deprives or tends to deprive, but even under the facts of this case, he can't prove a deprivation of an employment opportunity. First of all, he wasn't deprived of working at Kedzie. He worked at Kedzie on two separate occasions. The fact that this transfer, which involved no adverse effect on him, and remember the statute does say or otherwise adversely affect, it was a lateral transfer. What it boils down to is it was his preference to stay in Kedzie, and under the Seventh Circuit case law, that's not sufficient to establish a violation of Title VII. The Seventh Circuit has addressed segregation cases, the Nichols case and the Henry case were both segregation cases, and the court said in the Nichols case, very specifically, that the plaintiffs had to prove a materially adverse employment action. Had to prove or had proved. You know, there's... I get the sense that the district judge and the party's briefs are confusing necessary and sufficient conditions. We certainly have cases saying it is sufficient to show a violation of A-2, to show an adverse employment action within the scope of A-1. Do we have any cases saying that it is necessary to show, in order to show a violation of A-2, what would be necessary to show a violation of A-1? Your Honor, in the Nichols v. Southern Illinois University case, which was a Seventh Circuit case decided in 2007, that was a case involving black officers  to a predominantly black area of the campus. And in that case, the court said, under either method, whether the direct or indirect method, they, meaning the plaintiffs, must show that they suffered a materially adverse employment action. And not every action that makes an employee unhappy equals an adverse employment action. That was one segregation case by the Seventh Circuit. If you think we said that to show a violation of A-2, you have to show a violation of A-1, even though the language is substantially different, perhaps we have to re-examine those cases. That's an indefensible position. Clearly, Your Honor, I'm not saying that they have to show an adverse employment action with respect to terms, compensation, employment, because that's what A-1 says and A-2 does not say that. But getting back to deprivation or tendency to deprive... Both sides will find that we're serious about language. We're not going to say that A-2 is the same as A-1, because they aren't. That is correct. And we aren't going to ignore the language following the word employment in A-2. That is correct, because the suggestion or the statement by Congress is that it has to have some type of harm, whether the harm be a deprivation to the plaintiff himself, whether the harm be a deprivation to other individuals who seek employment opportunities, or that it otherwise adversely affects someone's employment. Well, tendency to harm is enough, too. Correct. And absolutely. But there is absolutely no evidence here, and I'm not trying to read out part of the statute like I believe the EEOC is trying to do. I'm embracing the statute, and under the facts of this case, there is absolutely no evidence that the transfer deprived him of any opportunities or tended to deprive anyone else. Their argument that it tended to deprive others, because I think it's clear that it did not deprive him. He worked at Kedzie twice. The change in circumstance was not geographically great, no change in pay or anything else, and their broader reach now is, well, perhaps it tended to deprive other individuals. Well, if you look at the Kedzie store and what happened at the Kedzie store, there is no evidence of segregation. Well, Leta Wilkie is an African-American store manager that was placed there. She left because she was promoted out of that store to a higher position. Who was she replaced by? She was replaced by another African-American. That was Mr. Harrington. Ms. Benitra Brown, who is a manager at the Kedzie store, African-American, has been there and remains there to this day. There was another African-American there, Ms. Wilkins, who worked there before, during, and after Mr. Stuckey, as well as Mr. Nash, who actually applied and worked there after Mr. Stuckey's transfer. Now, if you look at what the EEOC is arguing, because they're sliding theories of liability here as we make our arguments, their final argument has been, well, let's see, to get around the fact that Mr. Stuckey was transferred into and out of Kedzie on two separate occasions, we're now going to argue that the segregation actually started in July of 2012. And the person that they say at AutoZone who was responsible for this alleged segregation is Mr. Rob Harris. And this is in their reply brief, and they make it very, very clear that the segregation began in 2012 and continues to date by Mr. Harris. There were several problems with that. Number one, the biggest problem is that Mr. Harris lost responsibility at the Kedzie store shortly after he transferred Mr. Stuckey in July of 2012. Secondly, Mr. Harris, who's accused of segregation, did not know the racial makeup of the store that Mr. Stuckey was being sent to because it was in a different district. I think the argument is that he knew the clientele of the Kedzie store and was trying to conform the staffing to that clientele. And I appreciate that, Your Honor, but if that's the case, he would have removed Mr. Harrington from the store, who's also African-American. He would have removed Ms. Brown. He would have removed Mr. Wilkins. None of that happened. All those individuals stayed there after Mr. Stuckey transferred, a transfer which, in fact, he didn't show up for. They also alluded to the fact, well, Mr. Harrington left the store and was replaced by a Hispanic. If you look at the record evidence, Mr. Harrington left the store of his own volition for two reasons. He wanted to have a store closer to his home, and he was having a difficult time communicating with the Hispanic customers because he did not speak Spanish. With regard to Ms. Wilkins subsequently leaving the store, Ms. Wilkins testified that she remained at the store after Mr. Stuckey left, and she quit of her own volition. She also testified she was offered several promotions within the Kedzie store, which she turned down. And again, Ms. Brown is still at that particular store. The other thing that the EEOC does not really address is Mr. Harris, who is the one standing accused of the segregation and discrimination, actually placed Mr. Stuckey into the Kedzie store a year prior to transferring him out. And with regard to his alleged comment that he wanted to staff the store with Hispanics, if you look at Mr. Stuckey's statements to the EEOC, and it's found that Appellee's Appendix 0084, Mr. Stuckey said, and I'm going to quote, so I told him I don't understand why I got to transfer out of the district. I don't mind the transfer, but what's the real reason for the transfer? Then he goes on to say, I'm trying to make it a predominantly Hispanic store only because the area that the store is in and we lost a lot of sales in that store. And what I'm trying to do is get them sales back up to where they're supposed to be. So therefore, I felt it was best for me to transfer you out of that store. And this is Kevin Stuckey. So I told him there's other ways to get sales back up. Just because I don't speak Spanish, I have to go, that's not right. That's why we have other people at the store who speak Spanish to help out, but that shouldn't be your reason as to why you transferred me out of the store because of that. So Mr. Stuckey's own interpretation of Mr. Harris's alleged statement was that he was not bilingual, and that's why he was being transferred. And we cited several cases in our brief which established that a bilingual, a preference for bilingual employees is not a protected category of class. I'd like to, we cited numerous cases in our brief regarding adverse employment actions. And again, I would point the court to the Nichols case and the Henry case. There is a case outside of the Seventh Circuit, and that's the Del Carmen case, and I believe it's a West Virginia case. And that was a segregation claim under 2A2, and the court there dismissed on the pleadings because the plaintiff failed to plead an adverse employment action. We submit that the EEOC's position or argument that the adverse action was somehow humiliating doesn't pass muster either based on well-established Seventh Circuit law. And finally, there is no evidence of segregation based on all the individuals that were placed in Kedzie as well as Mr. Stuckey's placement into and out of Kedzie. Are there any more questions from the panel? Thank you, Ms. Kirk. Anything further, Ms. Beck? Thank you, Your Honors. The Fourth Circuit, in its Longshoremen Association decision, approvingly quoted the district court decision in that case and ordered the merger of these two segregated locals, and it said, the maintenance of separate locals in itself would tend to deprive individual members of employment opportunities that are equal. The court, the Fourth Circuit, explained racial segregation limits both black and white employees to advancement only within the confines of their races. The D.C. Circuit, as well, held that a sex-based classification was per se a violation. The Fifth Circuit, in its International Longshoremen's Association, ordering the merger of two locals, ordered unanimously that merger, and one judge expressly relied on the racial stigmatization that occurs when you racially segregate employees. So if this court does not accept the notion that a deprivation of employment opportunity occurred when Mr. Stuckey was removed from a geographic location, indeed, segregation connotes geographical change, this court, then, the commission submits, should consider the deprivation of an employment opportunity to be to work in an environment in which one is not confined to advancement or work within the confines of one's own race. Mr. Stuckey repeatedly objected to the July 2012 transfer, and when he was transferred, he was removed to a store with a predominantly black staff. Mr. Harrington testified the reason he wanted to transfer was because there would be occasions where he and Mr. Stuckey would be available to assist. Mr. Harrington was black, and there would be a line of 8 to 10 Hispanic employees who would wait to speak to a Hispanic salesperson rather than accept help from him or Mr. Stuckey. The deprivation of employment opportunity is the opportunity to work in a race-neutral environment where your performance is what matters. Thank you, Your Honor. Thank you, Counsel.